OPINION *Page 2 
{¶ 1} Appellant, Jay W. Newland, appeals a judgment of the Knox County Common Pleas Court convicting him of deception to obtain a dangerous drug in violation of R.C. 2925.22 and sentencing him to seventeen months incarceration. Appellee is the State of Ohio.
 STATEMENT OF FACTS AND CASE {¶ 2} Dr. Adil Katabay is an interventional pain specialist who began to treat appellant in April, 2006, for lower back pain and pain shooting down his legs. Before Dr. Katabay began treating appellant, appellant signed a "pain management contract." The contract stated in pertinent part, "Pain care specialist physicians will be informed of all medications I use. Failure to inform the physicians may result in termination of care by the Pain Care Specialists physicians. I agree to inform the Pain Care Specialists physicians if I do obtain a pain medicine from any other source for any reason." Tr. 104-105. Dr. Katabay began treating appellant's pain by using a combination of injections and the prescription drug Methadone, a Schedule II controlled substance.
 {¶ 3} While seeing Dr. Katabay, appellant was also being treated by Dr. Robert Rupert for a condition which caused multiple blood clots. Dr. Rupert prescribed Methadone to appellant for pain caused by the clots. In a letter Dr. Rupert wrote to Dr. Katabay on May 2, 2006, he informed Dr. Katabay that he was giving appellant Methadone. This letter was not in appellant's file at Dr. Katabay's office. Dr. Rupert again wrote to Dr. Katabay on August 1, 2006. In this letter he told Dr. Katabay that appellant asked for a prescription for Methadone, and he prescribed "120 of the 10-milligram." Tr. 129. Dr. Katabay underlined Dr. Rupert's statement about giving *Page 3 
appellant Methadone, put a question mark next to it, and made a note to discuss this with appellant at his next visit.
 {¶ 4} In October, 2006, Dr. Katabay planned to do a procedure on appellant involving injections. He was aware that appellant was taking the blood thinner Coumadin, prescribed by Dr. Rupert for blood clots, and contacted Dr. Rupert to make sure appellant could be off Coumadin for a week in order to allow him to do the procedure. Dr. Rupert responded that he could give appellant a different blood thinner, which he would stop the day before the injections.
 {¶ 5} By letter dated October 24, 2006, Dr. Rupert informed Dr. Katabay that appellant had poison ivy which may require steroid treatment or may require debridement if appellant has a recurring abscess as he has in the past. Dr. Rupert did not inform Dr. Katabay that he had prescribed Methadone once again for appellant. Dr. Rupert had in fact written appellant a prescription for Methadone, which was filled in Columbus on October 24, 2006.
 {¶ 6} Appellant went to Dr. Katabay's office for the scheduled injection procedure on October 31, 2006. The doctor did not see appellant until he was under sedation, although appellant had contact with the office staff. Appellant did not inform the office that he had a recent prescription for Methadone from Dr. Rupert. After the procedure was complete, Dr. Katabay wrote appellant a prescription for Methadone, which was filled in the Walmart Pharmacy in Mount Vernon, Knox County, on November 1, 2006.
 {¶ 7} In September of 2007, Detective Craig Feeney of the Mount Vernon Police Department tracked appellant's prescription records through the Ohio Automated Rx *Page 4 
Reporting System (OARRS). He discovered appellant had filled seventeen prescriptions for Methadone from a combination of prescriptions written by Dr. Rupert and Dr. Katabay. He noticed two instances in which the dates were overlapping, meaning appellant had obtained and filled a second prescription before the therapeutic days were completed on the first prescription. On October 24, 2006, a prescription for 240 five-milligram Methadone tablets written by Dr. Rupert was filled in Columbus, while on November 1, 2006, a prescription for 90 ten-milligram tablets written by Dr. Katabay was filled in Mount Vernon. Appellant filled a prescription for 90 ten-milligram tablets of Methadone from Dr. Katabay on January 12, 2007, and a prescription for 120 ten-milligram tablets from Dr. Rupert on January 23, 2007. Both prescriptions written in January, 2007, were filled in Columbus.
 {¶ 8} Appellant was charged by indictment with two counts of deception to obtain a dangerous drug. The case proceeded to jury trial in the Knox County Common Pleas Court. At the close of the state's case, the court dismissed Count 2 concerning the January prescriptions on appellant's Crim. R. 29 motion for acquittal because the case was not properly venued in Knox County.
 {¶ 9} Appellant testified at trial that he did not read the pain management contract required by Dr. Katabay's office before he signed it. He testified, "I just-I was like, scrip, please. You had to sign to get your medication and your treatment." Tr. 186. He admitted that he did not tell Dr. Katabay that he was receiving Methadone from Dr. Rupert because he believed it was not his "job" to keep Dr. Katabay informed. Tr. 187. Appellant testified, "Well, that's their job. I don't get in the middle of their stuff." Tr. 181. *Page 5 
 {¶ 10} The jury returned a guilty verdict on the remaining count of deception to obtain a dangerous drug, concerning the prescriptions filled October 24, 2006, and November 1, 2006. The court entered a judgment of conviction upon the jury's verdict and sentenced appellant to seventeen months incarceration. Appellant assigns two errors to the judgment of the trial court:
 {¶ 11} "I. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DECLINED TO ENTER JUDGMENT OF ACQUITTAL AS THERE WAS NO EVIDENCE TO SUPPORT THE CHARGE THAT THE DEFENDANT USED DECEPTION TO OBTAIN A DANGEROUS DRUG IN VIOLATION OF SECTION 2925.22 OF THE OHIO REVISED CODE.
 {¶ 12} "II. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DECLINED TO ENTER JUDGMENT OF ACQUITTAL BECAUSE VENUE WAS NOT PROPER IN KNOX COUNTY, OHIO FOR COUNT ONE OF THE INDICTMENT."
 {¶ 13} Because both of appellant's assignments of error argue that the court erred in overruling his Crim R. 29 motion for acquittal based on the sufficiency of the evidence, we consider both assignments of error under the same standard of review.
 {¶ 14} Crim. R. 29(A) provides, "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case." *Page 6 
 {¶ 15} Under Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Bridgeman
(1978), 55 Ohio St.2d 261. A motion for acquittal tests the sufficiency of the evidence. State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52.
 {¶ 16} A motion for acquittal under Crim. R. 29(A) is governed by the same standard as one for determining whether a verdict is supported by sufficient evidence. State v. Carter, 72 Ohio St.3d 545, 553,1995-Ohio-104; Thompkins, supra, at 386. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 I {¶ 17} In his first assignment of error, appellant argues that the evidence is insufficient to prove that he deceived Dr. Katabay, because Dr. Katabay was aware that he was receiving prescriptions for Methadone from Dr. Rupert. He also argues that, as to the particular prescription written on October 31, 2006, he could not have informed Dr. Katabay that he had received Methadone from Dr. Rupert a week earlier, as he was under sedation when he saw Dr. Katabay.
 {¶ 18} R.C. 2925.22(A) defines the offense of deception to obtain a dangerous drug: "No person, by deception, shall procure the administration of, a prescription for, or the dispensing of, a dangerous drug or shall possess an uncompleted preprinted *Page 7 
prescription blank used for writing a prescription for a dangerous drug." R.C. 2913.01(A) defines deception: "`Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
 {¶ 19} While the evidence does demonstrate that Dr. Katabay knew in August of 2006 that appellant had received a prescription from Dr. Rupert for Methadone, a rational trier of fact could find that when Dr. Katabay wrote the prescription at issue on October 31, 2006, he had been deceived because appellant withheld information concerning the prescription Dr. Rupert wrote on October 24, 2006. Dr. Katabay had communicated with Dr. Rupert before appellant's procedure on October 31 regarding the possibility of taking appellant off the drug Coumadin before the surgery. Dr. Rupert did not inform Dr. Katabay of the October 24 prescription which Dr. Rupert gave appellant for Methadone. Dr. Rupert further wrote to Dr. Katabay about the possibility of steroid treatment for appellant for poison ivy on the same date, but again did not mention the Methadone prescription. From this evidence, the jury could find that Dr. Katabay did not know appellant was receiving Methadone from Dr. Rupert after August, 2006.
 {¶ 20} Pursuant to the contract appellant signed with Dr. Katabay's office, he was under an affirmative duty to inform Dr. Katabay of any pain medications he received from another source. Appellant failed to inform Dr. Katabay of the prescription he *Page 8 
received from Dr. Rupert on October 24. Dr. Katabay testified that he would not have written the prescription on October 31 had he known appellant had received a prescription for Methadone one week earlier from Dr. Rupert. Tr. 117. He further testified that he was deceived by appellant's failure to tell him of the prescription from Dr. Rupert. Tr. 143-44. Viewed in a light most favorable to the prosecution, a rational trier of fact could find that appellant deceived Dr. Katabay by failing to tell him about the prescription from Dr. Rupert.
 {¶ 21} Appellant also argues that he could not have told Dr. Katabay about the prescription on October 31, because by the time he saw the doctor, he was under sedation. However, there was evidence that when a patient comes to the office for a procedure, the patient is interviewed by the nursing staff before the patient is placed on the table. Tr. 126. Appellant could have informed the nursing staff about the Methadone prescription at this time. The evidence further reflects that before or after a procedure, if a patient wants to talk to Dr. Katabay, the staff calls him to talk with the patient. Tr. 126-27. Appellant's chart from his procedure on October 31 does not reflect that he spoke to the doctor.
 {¶ 22} Appellant admitted on cross-examination that he could have called Dr. Katabay at any time. Tr. 194. He admitted that he could have asked to see the doctor on the day of the procedure. Tr. 195. When asked at trial if he asked to see Dr. Katabay on October 31, appellant responded, "Probably not `til the end of it. He always would check and say, hey, what's up, how's this, and what's going on, blah, blah, blah, the time you come out." Tr. 195-96. Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found that appellant could have *Page 9 
informed Dr. Katabay or his staff about the existence of the prescription from Dr. Rupert, despite the fact that he was sedated when he first saw the doctor, and, therefore, a rational trier of fact could have found that appellant procured a controlled substance by withholding information about a prior prescription.
 {¶ 23} The first assignment of error is overruled.
 II {¶ 24} In his second assignment of error, appellant argues that the evidence was insufficient to prove that venue was proper in Knox County. Appellant concedes at page thirteen of his brief that because "the dispensing of a dangerous drug" is an element of the offense, venue would be proper in Knox County because one of the prescriptions at issue was filled at the Walmart Pharmacy in Knox County. However, he argues the evidence is insufficient to demonstrate that the prescription was actually filled by appellant because his signature in the pharmacy log was not authenticated.
 {¶ 25} The evidence reflected that the prescription at issue was written by Dr. Katabay to appellant on October 31, 2006, and the doctor identified appellant in the courtroom. The evidence also clearly reflects a signature purporting to be appellant's in the pharmacy log from the Walmart Pharmacy in Mount Vernon on November 1, 2006, which is the same day and place the evidence demonstrates the prescription written on October 31 was filled. Eric Schlairet, the Pharmacy Manager of the Walmart Pharmacy in Mount Vernon, knew who appellant was from his work at the pharmacy, but could not specifically remember whether appellant filled the prescription on the day in question. When confronted with the prescription on cross-examination and asked if he filled that prescription at the Walmart in Mount Vernon, appellant responded, "It's got my name on *Page 10 
it." Tr. 196. When confronted with the signature purporting to be his on the prescription log and asked if that was his signature, appellant testified, "Yes. Looks like my signature. Yes, sir." Tr. 196. From all of this evidence, a rational trier of fact could determine that appellant filled the prescription in Knox County, and venue was proper.
 {¶ 26} The second assignment of error is overruled.
 {¶ 27} The judgment of the Knox County Court of Common Pleas is affirmed.
Edwards, J. Wise, P.J. and Delaney, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Knox County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1